Mrs. S. v. Vashon Island School Good morning. May it please the Court. My name is Vanessa Power, and I am here today with my colleague, David Goodnight, on behalf of Mrs. S. and her daughter, Gabriella. And at this time, if I could reserve six minutes for rebuttal, and I will keep track of my time. This case involves the denial of a child's right to a free, appropriate public education in the least restrictive environment. Under the Individuals with Disabilities Education Act, or IDEA, there is a rebuttable presumption that a child will be educated in a regular classroom unless a school district can show that regular education with the use of supplemental aids and services cannot be achieved. Here, Vashon Island fails to rebut that presumption. Instead of offering specially designed services to meet Gabriella's unique needs, Vashon Island offered an educational program that would have segregated Gabriella, and in fact would have been a step backwards from her prior placement. As a result, Gabriella has been denied her right to a free, appropriate education under the law. She has specifically been denied her opportunity to learn alongside her normally developing peers. During the 1993- I don't want to interrupt too much. I think this will just take a moment. And assuming we agree that there has been a denial, what's the appropriate remedy? The appropriate remedy in this case, we would ask the court to remand to the trial court for a determination specifically for reimbursement for the years that Gabriella has been homeschooled, and a determination of whether that met the standard of a free, appropriate education. And second, for an immediate IEP meeting, for an immediate reassessment. And reimbursement of expenses incurred by the family? That is correct, Your Honor. At this time, under Honig v. Doe, this case is not moot. Gabriella is now 17 years old. Under State law, until she is 21, she still has a right to be provided services. So obviously, this case is a case in which it is imperative that this child still have an opportunity to receive some services. During the 1993-94 school year, Gabriella did receive special education services. She received those services under an Individualized Education Program, or IEP, that was agreed to and developed by Ms. S., the parent, and her teacher. It was developed in accordance with the IDEA, and by many accounts, Gabriella was successful in the environment in which she was placed in the 1993-94 school year. Specifically, that environment was a class of 23 students, 5 of whom received special education services, the rest of whom were regular education students. It was a multi-age setting. It was taught by a certified special education teacher. However, there is nothing in Gabriella's IEP that specifically says that she needed to receive all of those services from a special education teacher. Now, the year before that, she was in special education, right? That is correct, in the 92-93 school year. And also, is it correct that that class that she was in in 94-95, or whatever, the last year, that that was a unique program in the state of Washington, and that that's the only one there is like that? Vashon has argued that it was a unique program. In fact, Your Honor, the program itself is not specifically defined by the IEP. The IEP was provided within that program setting. However, because Gabriella's IEP set forth specific guidelines, specific goals and objectives, we argue that that IEP could have been met in a variety of different settings, so not only within that one school. That in fact, if we take a look at the IEP itself, and you can see at SCR 4043, that the IEP provided for 1,650 regular education minutes alongside 1,650 special education minutes. What this means when this Court looks at it, because this Court does look at the IEP, this Court can look at that IEP and determine that there is no way that a school could provide both 100 percent regular education minutes and 100 percent special education minutes solely in the special education segregated context, because that would limit Gabriella's regular education time. The only way that could be provided was similar to a situation at AS-1 in the 93-94 school year, but could have been provided in Vashon Island in a regular education classroom with 100 percent support for Gabriella's special education needs. Vashon Island, when Gabriella came into the school district, Vashon Island started at the wrong end of the continuum. Under the IDEA, a school district must have a continuum of alternative services and placements available for children with disabilities. That continuum, there's the rebuttable presumption that they will start at the regular education end of the continuum, and if a child with disabilities cannot be educated within the regular classroom, they will look at what supplemental aids and services can be provided so that child can still be mainstreamed. In this situation, Vashon started at the wrong end of the continuum. They started by placing Gabriella in a segregated special education classroom, and then offering an up to an hour a day of regular education interaction, and that only included non-academic lunch, recess. I wonder if what we're talking about was what they wanted to do as an interim initial placement while they could develop, obtain all the information, develop the permanent program? That's correct. Vashon has, there are several different IEPs that you will see within your record. The IEP that we would point to as the one that Vashon actually proposed was the IEP that was proposed on October 31st of 1995, and you can find that in your record at SCR 95. That IEP was developed without Ms. S. present at an IEP meeting. Under the IDEA, and cases that have come from it, courts have found, including the Ninth Circuit, that it is imperative that a parent be a part of an IEP meeting. And why wasn't she there? Ms. S. was concerned that any IEP meeting include a regular education teacher. Until the date that Vashon did arrange for an IEP meeting that included a regular education teacher, Ms. S. declined to attend because she did not feel that it would address the needs of the IEP. Taking that Ms. S. thought it appropriate that there be a regular education teacher at that meeting, do you contend that there was a legal requirement that there be a regular education teacher at that meeting? Under the implementing regulations of the IDEA, there are a number of situations that are addressed, and specifically at 34 CFR part 300 question 16, when a child is enrolled in both regular and special education services as we have here, the regulations denote that a parent may also determine who should be present at that IEP meeting. Normally it is at the discretion of the district when a child receives both regular and special education services, but the parent also has a role in determining who should be present. The parent is seen as, their role in the IEP meeting is as an equal participant. But you say that that applies when the child is receiving both types. And here, as I understood it, these meetings were to determine whether she should receive both types, or whether she should receive, what type she should receive. This was the meeting, these meetings were to develop the first regular placement. So why would a regulation that applies when you're actually receiving both types apply to these meetings? In this instance, the court would look at the last agreed upon IEP for the child as to what their current placement was. And so in this situation, when Gabriella entered the Vachon School District, her last agreed upon IEP was the 9394 IEP. And so the school district is to look at that as guidance for determining the next step where Gabriella should be placed. There is authority under the rules that allow for a school district to determine an interim placement. However, in this instance, an IEP meeting, a proper IEP meeting, was not held until November 13th of 1995, when school year started on September 5th. And that proper IEP meeting did not take place until days after Vachon Island had already filed for a due process hearing to show that a prior proposed IEP was proper. And we contend that this was not only retaliatory, but improper under the procedures, because the IEP that they asked the administrative law judge to determine was proper was an IEP that was prepared without the parent. In this situation as well, when the school district filed for a due process hearing on the quote-unquote stay put provisions of the IDEA, I kicked in at that point, and that's at 20 U.S.C. 1415 subsection E. That provides that pending any administrative procedure, the school district is obligated to implement the child's then current educational placement. In this case, because there was no other agreed upon IEP, that means that Vachon was then required to implement Gabriella's 9394 IEP on its face, on its terms, not subject to additional interpretation, not subject to additional interim attempts to determine how they could implement that within their school district. But no, that was to be implemented on its face and on its terms. The school district does have an affirmative duty to a child. In this case, Vachon has argued that the parent has attempted to frustrate the process, that an IEP meeting was not held because of actions on behalf of Ms. S. In fact, the school district has an affirmative duty to a child, regardless of the situation that the school district was in here. The   has an affirmative duty to a child, and simply attempting to protect her rights and her child's rights under the law. At this time, I would like to reserve my remaining time for rebuttal unless there are questions. Thank you, counsel. Thank you. Good morning, Your Honors. I'm Christopher Hurst. It may please the Court, I'll be splitting my time this morning because we have two appellees. By agreement of counsel, David Stolier, we've agreed that I would take 15 minutes and he would take the remaining five minutes on behalf of the Superintendent of Public Instruction. I'm here on behalf of Appellee Vachon Island School District. I'm accompanied by my colleague, Jennifer Crowder, and the Superintendent and Special Education Director of Vachon Island School District. We see this case very differently, Your Honors, from the way the Petitioner sees it. This case is driven by five key factors, in our view. Number one, the standard of review, and as we're confident Your Honors are aware, the standard of review requires this Court to review the findings of fact of Judge William Dwyer, and because he found that the record supported all of the findings of fact of the administrative law judges, the findings of fact of those administrative law judges, for clear error. We also are confident that this Court is aware that Judge Dwyer denied the parent's request for reimbursement expenses, and therefore, his decision to exercise his discretion to deny that relief is reviewed for abuse of discretion in accordance with the Poolaw v. Bishop case of this Court. Did he deny it because he felt she was not legally entitled, because she didn't prevail, or because he thought there was a violation, but within his discretion he wasn't going to give any reimbursement? Well, his decision doesn't tell us one way or the other, Your Honor, and he didn't say anything in the courtroom when I was there during the proceedings, and so I can't answer that other than to indicate that his decision does not answer the question one way or the other. Let me pursue that for a minute. Did he say, I do this within my discretion? He did not say those words. He just said he denied relief. That's correct. So you don't know whether – well, let me ask it this way. Is it a review for abuse of discretion if he denies it because he thinks that Ms. S. is not legally entitled to it, or is that reviewed on some other basis? Well, the Poolaw v. Bishop case doesn't tell us one way or the other how we sort those two competing interests out, Your Honor. The second major thing that we hope the Court will understand is this is a case in which the parent was asking for something she wasn't entitled to. She was asking to change the educational placement and setting for this child from full-time, specially designed instruction to regular education. And the arguments of the Petitioner to the contrary are simply wrong. The very best evidence of this notion, which was found by both Judge Dwyer and by the administrative law judge who heard the first case, is SER 43. It's the signature page – or excuse me, the minutes page of the IEP from Seattle School District during the 93-94 school year – and it checks the box, number 4, saying that the student was in specialized, self-contained service. And that was described by Prozine Menzendick, the director of special education at Seattle School District at the time, that that meant she was in full-time special education. The parent demanded to move to regular education. She had done it the previous year in Seattle School District, as Judge Dwyer found in his finding number 2 and 3. And the Seattle School District, based on its immediate and first-hand experience with this child, had determined that it was not appropriate because her needs could not be met in regular education. Nevertheless, the parent then holds the child out for the entire balance of the 94-95 school year and moves to Vashon at the end of September of 95 and demands that Vashon do the same thing. Fortunately, Vashon understood that because this was a transfer case and the parent was asking for something that wasn't currently in existence for the child, that its obligations were to get hold of a current copy of the student's IEP. The parent made this difficult. And we are not here to say that if the district had failed in its obligations to this student, that that would have been excused by the parent making the process difficult. The law is very clear, certainly is now, maybe not at the time, but since then, the target range decision, the Shapiro decision that we've cited to you and as has Petitioner, make it clear that it's not an excuse for a school district to fail to satisfy its duty to a student because a parent makes the process difficult. What Judge Dwyer found was that it extended the process. Fortunately, though, this district did not use that as an excuse and despite the parent's conduct making it very difficult, proceeded forward and offered an IEP that was found by both Judge Dwyer and the Administrative Law Judge to be in substantial conformance with the last IEP from Seattle. Now, in response to the question that Judge Reinhart asked of opposing counsel, Judge Dwyer and Administrative Law Judge both found that the Seattle school district program was unique. And so then we get to the notion of this transfer rule. The family moves to Vashon, we stay on September 28th. That's what the, by the way, I want to talk about this residence question just briefly. It's real clear under IDEA that IDEA itself does not answer the question of residency and IDEA cases have routinely said, including Union School District versus Smith of this circuit, that we look to state law for such questions. We've cited to you what the state law says. It's where the child lives the majority of the time. By the fact that she was planning to move to Vashon doesn't make her anymore a resident prior to September 28th, 1995 of Vashon than if I plan to think someday that I'd like to move back into the city from the suburbs. Doesn't make me a resident of the city of Seattle that I plan to do that now that my children are gone. We get to the transfer issue. The transfer issue is very important not only for this case but guidance. There's a real opportunity for this court to give guidance to school districts throughout this jurisdiction. We are unaware of any court of appeals decision that has dealt with the transfer issue. Board of Education versus Rowley says leave the policymaking decisions about education to the educators and the experts. We've got the experts at the Office of Special Education Programs issuing what we call the letter to Campbell, which we've attached to our materials, saying that in the case of a transfer that the school district's obligation is to implement to the maximum extent it can the existing IEP from the previous school district. And if it doesn't have an identical program to come as close as it can, again, mimic it to the maximum extent possible. We had a unique program in Seattle. Vashon Island proposed not an isolated program. But rather what is characterized throughout the evidence as its elementary transition program. The IEP that was written was written to indicate that the student would have at least 300 minutes a week of contact with regular ed students in various classes and other opportunities. And that was the minimum. And to the extent that she was able to tolerate more contact with her peers, that the district was prepared to allow her to do that. And this was an interim IEP, just as the letter to Campbell says, so that the district could have an opportunity to reassess the child, because her assessment was due by agreement of the parent and the school district, and to view her in this interim program to determine what a longer term program should look like. This district did not commit procedural violations in this instance. And I'd like to tell you how I get there. This family moved in in late September to the Vashon Island School District. The district learned of it in early October. Immediately tried to schedule a meeting with the parent. And the parent canceled it. The district again tried to schedule a meeting with the parent and to try to get records from Seattle School District to implement what it understood was the transfer rule. The parent wouldn't sign a consent for exchange of records. That made it more difficult for them. Said they couldn't have direct one-on-one conversation with Seattle School District. Nevertheless, Vashon Island realized that it could do precisely those things without her permission and proceeded to do so. Seattle, unfortunately, initially sent the wrong IEP. It sent the 92-93 IEP. Vashon developed an interim IEP in its elementary transition program that would have mimicked that IEP. Asked the parent to come in to meet. Scheduled an IEP meeting for October 31. And the parent refused to attend. Now, she later claims that it was because she wanted a regular education teacher there. Well, what the district did then at that meeting is what this court has endorsed is when a parent declines to attend, target range, for example, then it needs to continue to press forward. And that's precisely what this district did. At what point does either Vashon or Seattle become aware that the wrong one was sent? Because I gather that the correct one was sent prior to October 31. No. The correct one was sent in mid-November, Your Honor. When the mistake is realized is when the parent finally will meet with the district. And how did the mistake come to be realized? It comes to be realized when the district holds the October 31 meeting, sends out a draft IEP. The parent says, and they ask the parent to meet to discuss this draft IEP. Then on November 7, because the parent won't respond, it does what this court has said they need to do. It files for a due process hearing to force the matter along. The parent then does agree to meet with the family on November 13. And she comes in and says, why are you looking at this IEP? It's not the most recent one. So it's the parent who finally draws the district's attention to that. That's correct. And then what the district does is immediately get in touch with Seattle. Seattle realizes its mistake, sends the right IEP. The district readjusts the interim IEP that it had proposed in a draft manner. And it sets up a meeting with the parent. And the meeting occurs. And the draft IEP that is before you that was proposed by the district on December 1 is the one that we're arguing about. And that IEP would have... What's the date of that meeting? December 1, 1995. And the only reason it took that long, Your Honor, I think the record is clear, and Judge Dwyer and Administrative Law Judge Grant both found it was because the parent would cancel meetings, refuse to attend meetings, things like that. The meetings were canceled that were set in, I'm looking at finding seven from Judge Dwyer on September 29, October 11, October 41, November 13, 14, and 15. Yes, and also into early November as well, Your Honor. And then those were canceled, were they all canceled all because Ms. S. declined to participate in the way they were structured? Yes. The ones that Judge Dwyer refers to and the ones I was just referring to are all a result of her declining to participate. And this district then did, as Your Honors have... Or this court, excuse me, has previously said they need to keep pressing the matter forward. So we urge this court to endorse and embrace the transfer rule because it makes sound educational policy. A district receiving a student from another district needs to have clear guidance. It has clear guidance from the letter to Campbell that is before you from the Office of Special Education Programs, which has been also endorsed by the Office for Civil Rights for the Department of Education. And as this court has indicated in the Gregory K. versus Longview School District, as well as the United States Supreme Court said in Goss versus Lopez, we're going to look to those kinds of educational policy guidance letters with, as this court has said in the Gregory K. case, with some deference. But what have other circuits done? No one else, to my knowledge, and we've looked at this real carefully, Your Honor, has addressed anything about what a district's obligation is concerning the transfer rule. In fact, the only district court decision I'm aware of concerning that issue is Judge Dwyer's. So really it's a question of first impression and the sorts of appeals? That's my understanding, Your Honor. And we've looked very carefully, so I say that with some confidence. The next thing that I would point out is we're not hiding behind this transfer rule, even though there are clear findings by the Administrative Law Judge and by Judge Dwyer that the IEP developed by Vashon Island School District met its obligation to comply with this transfer rule. We're not hiding behind that and saying, and that's okay, that should solve a program that isn't substantively correct. That program was substantively correct for this child. The testimony of the last special education teacher to teach this child, Kathy Titus from Seattle School District, is that this child cannot be appropriately served in a regular education environment. How can we get around that finding, which was made by both Judge Dwyer, again, and the Administrative Law Judge Grant, when that's the testimony that supports it? It can't be clearly erroneous. It's the only expert testimony you have. It's the last special education teacher. This district properly refused to try to educate this child in a regular education classroom. We also have in this record, the last time the child was served in regular education was during the 92-93 school year in Bagley Elementary in Seattle School District, and in that circumstance, she did not receive meaningful educational benefit. And she engaged in behaviors that were disruptive. She engaged in behaviors that were, she doesn't understand, or at least at that time, didn't understand the concept of space with her peers, so it was disruptive to her interactions, her ability to interact with her peers. She needed to be taught how to interact with her peers through a program like the elementary transition program that Vashon proposed. And she demanded, not just required, demanded undue amount of time and attention from the regular education teacher. And one of the things this court has indicated is not only whether it can be achieved adequately academically in the regular environment, in the Rachel Holland versus Sacramento School District case, but whether the student engages in behaviors that will detract from the educational environment in the regular classroom. And that's precisely what this student did the last time she was in regular education. So there's lots of evidence in this record, more than ample evidence in this record, to support the notion that the district's insistence that this child be in a more restrictive environment, namely its elementary transition program, be the least restrictive environment for this child. And as Administrative Law Judge Grant indicated, it cannot be accurately characterized as fully self-contained, full-time special education because of this transition component. Now, I see that I'm out of time or I'm hitting the yellow light. In summary, our view is that this court has a real opportunity to help school students with meaningful guidance in this case on two distinct issues. Previous decisions by this court have emphasized how districts have not complied because they've stopped processing a matter because of difficulty in dealing with parents on the procedural ideas. And we hope that you will extend the notions of target range in Shapiro by indicating, well, this is one time when the school district did meet its obligations because it, despite difficulties, continued to push forward and any delays were caused by those difficulties generated by the parent. And the second major issue that we hope you'll provide guidance to public school districts with is the notion that the transfer rule makes sound educational policy, that you will give it the deference that the courts have indicated those kinds of policy guidelines are to be given and that it makes sense. I'll tell you what the guidance on the transfer rule, the rule that what? You implement the old IEP if possible? Correct. That's the letter to Campbell which we attached to our materials, Your Honor. And it specifically indicates what, how it provides further detail on that notion, but that's the gist of it. You implement the former, the prior IEP, quote, to the extent possible. That's right. And if the school district to which the transfer is made doesn't have the same sort of program as is the case here, it is to implement it to the maximum extent it can on an interim basis until it can assess and adjust the IEP on a longer term basis through ideas processed. Apart from the legal issues which were told on that issue hasn't been addressed in the circuit courts. Is there, in terms of educational communities, any established authorities or different schools of thought on that issue? In other words, on the transfer, what you call the transfer rule. Is there any, I don't know where it would come from, what discipline, academic or legal educational department like studies that say that reasons for that rule? I'm only aware of the guidance, the official guidance from OSEP, Office of Special Education Programs, and OCR saying that it makes sense to them. And then I also do a lot of special ed work personally and it is everything that I understand that educators follow that rule. We've taken you three minutes over. We'll give your co-counsel just those five minutes. Thank you. Thank you, Your Honor. May it please the Court, my name is David Stolje, Assistant Attorney General representing the Washington State Superintendent of Public Instruction in this case. And again, I found myself taking the Court's time responding to an argument that wasn't made against us as we did in the briefing. I'm going to spend my limited time addressing the independent alternative bases upon which the Court can and should affirm the district court's dismissal of the superintendent in this case. The claims against the superintendent are predicated on a failure of the parent over the appropriate interim placement. It begs the question, what is meant by intervene? And the appellant has never explicated on exactly what they believe the duty to intervene entails. If it means that the state agency needs to listen to the parent, advise the parent of her rights, offer to advise of remedies available in the law, offer to facilitate a negotiated resolution, offer to provide mediation at no cost, offer to investigate upon submission of a complaint or provide a due process hearing, the record establishes that the superintendent's office did all of those things. If, on the other hand, intervene is intended to mean that the state agency is to make an independent judgment and order the school district to place the student in a setting contrary to what a due process administrative law judge has decided, there's no support in the law for such a proposition. Rather, the Doe v. Gonzalez v. Mayer case establishes that a state agency can be liable for a school district's breach of its duty under IDEA where there's notice of a significant breach by the school district and the state agency has an opportunity to compel compliance. And in this case, the superintendent was never made aware of any significant breach by the school district. We had two due process hearings in this case establishing that the district was in full compliance. The parent claims that three letters that were copied to the state in November of 1995 should have put the state on notice that the school district was in breach. But those letters really, if you look at them, they established that there was disagreement between the parent and the school district, but they also established the ongoing discussions over IEP meetings and evaluations and that Mr. Hurst talked about previously. And by December 1995, there was a due process proceeding in place. At that point, it would not be reasonable for the state to step in and terminate the proceedings or to do anything other than let them run their course. The parent also relies on some discussions that she had with the officials of the superintendent's office. She met with the special education director. She met with the assistant superintendent and a host of others in the superintendent's office. She was provided with the same access that a school district superintendent might get if the school superintendent complained to the state about the outcome of a due process proceeding. However, there's nothing in the law to suggest that the state has any overrule on its own the outcome of administrative due process proceeding. That's for the court to do. In conclusion, the record supports affirming the district court's dismissal of OSPI in this case. And that's independently of what you find as far as the administrative hearing decisions. Let me conclude. Your Honors, if I could address a few issues that were raised during Vashon's presentation. First, we would argue that Judge Dwyer's ruling on the denial of reimbursement should be reviewed de novo as it was a conclusion of law and because he did not articulate specifically how he reached that conclusion. Second, on the issue of transfer, there is some guidance in the regulations, specifically at 34 CFR Part 300. It's in the Appendix C, Questions 5 and 6. It provides that if a child moves to another school district, that school district must implement, must, number one, hold an IEP meeting if the district or the parent believes that the placement that the child last had was not appropriate. That would be true in this instance. That IEP meeting is to take place as soon as possible after the child enrolls in the Here, an IEP meeting did not take place until, if you take it as a proper IEP meeting, at the earliest, October 31st. As we would argue, a proper IEP meeting did not take place until November 13th. One thing, the school district said that an issue that needs to be cleared up is the question of what happens on transfer. The question is whether the school district agrees with the content of the Campbell Letter. They say they rely on the Campbell Letter and that that's a proper statement. Do you disagree with the contents of the Campbell Letter, or do you agree that that is the proper procedure? We would agree that that's the proper procedure, but substantively would not agree that Vashon followed. That's correct. Okay. So the parties are in agreement as to what the transfer rule should be, right? In a sense, yes. Except you disagree on how you implement it. That is correct, Your Honor. Okay. So in implementing those transfer rules in this situation, we see that Gabriela entered the school district as an inter-district transfer student. So immediately there should have been an IEP meeting. Because Gabriela had not been assessed in several years, and because her IEP was last developed in November of 1993, she needed to be reassessed as well. That should have taken place immediately, and in this case did not take place until almost six months after Gabriela entered the school district. In addition, in looking at how that IEP needs to be implemented, if the 9394 IEP needed to be implemented to the greatest extent possible when Gabriela entered the school district, obviously we argue that it was not implemented on its terms to the greatest extent possible. Here's my problem with a lot of the timing issues. It's very apparent as you read through the record and sort of trace what happened here, that Ms. S. starts out distrusting of the process, and for various reasons doesn't want to sign the agreement to have the records come over, doesn't want to have meetings because she thinks the right person isn't there, or doesn't want an evaluation of Gabriela herself because she's sick on that day or she's not ready on another day. So not in any way suggesting that the actions of Ms. S. were wrong, but what do we do when she's done that which slows things down so much? In that instance which occurred here, we would argue that that last agreed upon IEP needs to be implemented. Again, Vashon has argued that they attempted to do that. They also disenrolled Gabriela from the school district. They also have argued several different points with regard to that IEP. In essence, as of November 7th, the stay-put rules were activated basically, and at that point Vashon was obligated under the rules to implement to its terms that last agreed upon IEP. But stay-put is pretty tough here because the stay-put rule works easily when the child stays in the same school district, there's the same placement, and you just stay put. But here she's moved to a different district. Even if it were possible for her to stay put in Seattle, which she didn't quite do, that is to say she withdrew for a year from Seattle because of unhappiness with the way it was working out in Seattle, it's unclear what stay-put means in the transferee district. That's true, Your Honor, but stay-put in this case would mean that the terms of the IEP would be implemented. So in order to implement that, this court would be able to do that. The terms of the last Seattle IEP. That is correct, the last agreed upon IEP. As I recall of the rule, it says it should be implemented if they have comparable facilities or comparable arrangements, and if it's possible to do it, but that if they can't, then they can do something else. Not under the stay-put provision, Your Honor. Under the stay-put provision, it has been the courts have looked at this and have enforced it quite stringently. It needs to be implemented on its terms, on its face. And in this case, Vashon has simply failed to rebut the presumption that they attempted to truly try to implement that IEP. The placement that was offered for Gabriella in this case, when Gabriella came into the school district, there were some informal meetings before any IEP meeting where Ms. S. met with people from the district. At that time, the placement that was offered for Gabriella was a segregated, self-contained special education classroom with up to 300 minutes of regular education per week. Once there was an October 31st IEP meeting, the placement that was offered for Gabriella was a segregated, self-contained special education classroom with up to 300 regular education minutes per week. Once there was a valid IEP meeting on November 13th, which included the parent, but which the parent did not agree to the result, there was an IEP that came out on December 1st of 1995. Again, that placement was a segregated, self-contained special education classroom with up to 300 regular education minutes per week. Obviously, Ms. S. is an advocate for her child. The last placement that Gabriella received included 100% regular education interaction, as well as 100% consideration for her special education needs. As we've shown, an IEP provides what services, what goals, what objectives need to be met for a child. It does not specifically say that a child needs to be educated by a special education teacher. Gabriella's 9394 IEP does not specify that. Special education is a service. Under the IDEA, special education is specially designed instruction to meet a child's unique needs. That can be provided across the curriculum, and as was the case in 9394, was provided across the curriculum 100% of the time with Gabriella's normally developing peers. Your Honors, as I run out of time here, I would like to just ask the Court to find that Vashon failed both procedurally and substantively in following the requirements of the IDEA in attempting to provide Gabriella with services. Here, we acknowledge that they did attempt to provide Gabriella with services. Those attempts, however, failed to meet the mandates of the IDEA. Thank you. Thank you very much, Catherine. Thank you all very much. Very helpful argument. Thank you. Thank you.
judges: Reinhardt, W. Fletcher, Gould